UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RAVEN JOHNSON and TYSHAUN COLLINS )<br>    **Plaintiffs** )<br>  )<br>v.  )<br>  )<br>STRAITS TURNPIKE AUTOMOTIVE, LLC  )<br>and THE HARTFORD AUTO GROUP, INC.,  )<br>doing business together as  )<br>**MID STATE MITSUBISHI**, and  )<br>**SANTANDER CONSUMER USA INC.**  )<br>    **Defendants** )<br>_____ ) | CIVIL ACTION NO.<br><br><br><br><br>TRIAL BY JURY DEMANDED<br><br><br><br><br>FEBRUARY 25, 2020 |

## COMPLAINT

### I.    INTRODUCTION

1.    This is a suit by two consumers against an automobile dealership for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679 *et seq.*, the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1690 *et seq.*, the Connecticut Retail Installment Sales Financing Act ("RISFA"), Conn. Gen. Stat. § 36a-770 *et seq.*, and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-11a *et seq.*, in connection with the sale of a motor vehicle.  Plaintiffs assert claims against Santander Consumer USA Inc. ("Santander") as holder of the retail installment contract.

### II.    PARTIES

2.    Plaintiff Raven Johnson ("Johnson") is a consumer residing in Bristol, Connecticut.

3. Plaintiff Tyshaun Collins ("Collins") is a consumer residing in Middlebury, Connecticut.

4. Straits Turnpike Automotive, LLC ("STA") is a Connecticut limited liability company and it operates an automobile dealership in Watertown, Connecticut.

5. The Hartford Auto Group, Inc. ("HAG") is a Connecticut corporation located in West Hartford, Connecticut.

6. Santander is an Illinois corporation with a principal office in Dallas, Texas that regularly accepts assignment of retail installment sales contracts from Connecticut dealerships.

## III. JURISDICTION

7. Jurisdiction in this Court is proper pursuant to 15 U.S.C. § 1640(e), 15 U.S.C. § 1691e(f), and 28 U.S.C. § 1331. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

8. This Court has jurisdiction over STA and HAG because they are located in Connecticut and are organized under Connecticut Law.

9. This Court has jurisdiction over Santander because it regularly conducts business in this state.

10. Venue in this Court is proper, because the Plaintiffs reside in this state and the acts complained of occurred in this state.

## IV. FACTUAL ALLEGATIONS

11. STA and HAG are part of the "MAC Auto Group", which is a group of several dealerships in Connecticut with common ownership, control and employees.

12. The operative purchase order in this transaction states that the selling dealership is "The Hartford Auto Group, Inc. d/b/a Mid State Mitsubishi", dealer license N2688.

13. The retail installment sales contract in this transaction lists the seller/creditor as Mid State Mitsubishi without identifying the corporate entity.

14. The dealership license for the Watertown, Connecticut location where the transaction occurred is held by STA.

15. For this reason, Plaintiffs believe and allege that STA and HAG were both doing business as Mid State Mitsubishi, and this action is asserted against them jointly.

16. Prior to September 7, 2019, Johnson went to Mid State Mitsubishi in Watertown, Connecticut because she was interested in purchasing a vehicle.

17. Johnson provided credit information to Mid State Mitsubishi, because she did not have sufficient cash to purchase the Vehicle and required financing, which is offered to consumers by Mid State Mitsubishi.

18. Mid State Mitsubishi told Johnson she was not approved for financing and that she would need a co-signor in order to finance the purchase of a vehicle.

19. Johnson, who is a young African American woman, did not receive any notice from Mid State Mitsubishi indicating the reason she was turned down for credit individually.

20. Johnson contacted Collins, who agreed to co-sign for financing.

21. On or about September 7, 2019 Johnson returned to Mid State Mitsubishi with Collins, and she selected a new 2019 Mitsubishi Outlander (the "Vehicle").

22. The Vehicle did not have a Monroney sticker the new car sticker showing, among other information, the manufacturer's suggested retail price.

23. Plaintiff paid a down payment of $100.00 to Mid State Mitsubishi.

24. Johnson traded in a 2002 Toyota Camry towards the purchase of the Vehicle for which Mid State Mitsubishi provided a trade-in allowance of $1,000.

25. Mid State Mitsubishi prepared the retail installment contract for the Vehicle (the "Contract") that listed the "Buyer" as Collins and the "Co-Buyer" as "N/A".

26. The Contract listed a cash sale price of $26,473.00, including sales tax of $1,756.75, and a false down payment of $3,100.00, even though Johnson only paid $100.

27. On information and believe, the Vehicle's cash sale price was more than the sale price advertised by Mid State Mitsubishi, even following the subtraction of the false $3,000 cash payment.

28. The Contract included a service contract in the amount of $3,350 that the Plaintiffs neither requested nor desired, and Mid State Mitsubishi failed to provide Plaintiffs with a copy of the service contract.

29. Mid State Mitsubishi included a VIN etch charge of $199 on the Contract even though the Vehicle's windows were not etched.

30. The Contract was an electronically executed agreement, and Mid State Mitsubishi's finance manager executed the Contract herself rather than permitting Collins or Johnson to do so.

31.  Additionally, the finance manager turned the screen towards herself rather than towards Collins and Johnson, preventing them from discovering that Collins was the sole purchaser and that Johnson was not a party to the Contract.

32.  The Contract was assigned to Santander.

33.  On information and belief, Mid State Mitsubishi submitted false information to Santander regarding the Vehicle's model or its standard or optional equipment in order to deceive Santander into believing that the Vehicle was worth more than its actual value. Plaintiffs base this allegation upon the fact that the Vehicle was sold at a price that was more than the Manufacturers Suggested Retail Price and the business practice of dealerships in the MAC Auto Group to engage in the practice of "powerbooking", or the false representation that vehicles contain premium features that are not present.

34.  Mid State Mitsubishi falsely told Johnson that she could refinance the loan in six months to remove Collins from the Contract.

35.  This was a false and deceptive statement, and Mid State Mitsubishi knew the information was false, because Johnson was not listed as a Buyer or Co-Buyer on the Contract documents and she would not be able to refinance the loan.

36.  Additionally, due to the inflated price and high amount financed, the slow rate at which the Contract's balance would decline in the first six months, and the rapid depreciation of the Vehicle after it was no longer new, and Johnson's credit, Mid State Mitsubishi knew that it would not be possible for Johnson to obtain financing to repay the balance owed on the Contract after six months.

37. The purchase was made for the benefit of Johnson, who was the primary operator of the Vehicle and who made the payments on the Vehicle, and Mid State Mitsubishi knew that Johnson was the actual buyer of the Vehicle and that Collins believed that he was a co-signor.

38. Plaintiffs were not provided with a copy of the Contract in a form that they could keep.

39. On January 23, 2020, Plaintiffs, by their attorney, notified Mid State Mitsubishi and Santander that they revoked acceptance of the Vehicle or, alternatively, they had rescinded the transaction, and the Vehicle was returned to Mid State Mitsubishi the prior evening.

## V.   CAUSES OF ACTION

### a. TRUTH IN LENDING ACT (Collins v. STA and HAG)

40. Mid State Mitsubishi violated TILA by falsely stating in the Contract that Collins made a $3,100 down payment when only $100 had been paid.

41. Although the contract listed a cash price of $24,517.25, the effective cash price of the Vehicle was $21,517.25.

42. The increased sales tax of $190.50 that is attributable to the false down payment would not have been charged in a comparable cash transaction, and it should have been disclosed as a finance charge instead of included as part of the amount financed.

43. Mid State Mitsubishi further violated TILA by failing to provide Collins with the TILA disclosures required by 15 U.S.C. § 1638 in a form that he could keep.

44.  Mid State Mitsubishi is liable to Collins for actual damages, statutory damages of $2,000, plus attorney's fees and costs.

### b. CREDIT REPAIR ORGANIZATIONS ACT (Collins v. STA and HAG).

45.  By providing false information relating to the down payment and the Vehicle's features to Santander, Mid State Mitsubishi violated 15 U.S.C. § 1679b(a)(1), which prohibits any person from making any statement that is untrue or misleading with respect to any consumer's credit worthiness, credit standing, or credit capacity to any person to whom the consumer has applied or is applying for an extension of credit.

46.  Mid State Mitsubishi is liable to Plaintiffs for damages, punitive damages, and attorney's fees and costs pursuant to 15 U.S.C. § 1679g.

### c. EQUAL CREDIT OPPORTUNITY ACT (Johnson v. STA and HAG)

47.  Mid State Mitsubishi is a "creditor" as that term is defined by the Equal Credit Opportunity Act ("ECOA"). See 12 C.F.R. § 1002.2(l); *Tyson v. Sterling Rental, Inc.*, 836 F.3d 571, 578 (6th Cir. 2016).

48.  Mid State Mitsubishi denied Johnson's credit application.

49.  Mid State Mitsubishi failed to provide Johnson with a written notice that it had taken adverse action on her credit application as required by 15 U.S.C. § 1691(d)(1).

50.  Mid State Mitsubishi further violated ECOA by failing to provide Johnson with a written statement of the reasons for its action or notice of her right to request such a statement as required by 15 U.S.C. § 1691(d)(2).

51.  As a proximate result of Mid State Mitsubishi's violations of the ECOA, Johnson suffered embarrassment, humiliation, mental distress and inconvenience.

52. Mid State Mitsubish is liable to Johnson for actual damages, punitive damages of up to $10,000, pursuant to 15 U.S.C. § 1691e and a reasonable attorney's fee.

### d. RETAIL INSTALLMENT SALES FINANCING ACT (Collins against both defendants)

53. The Contract violated RISFA in that it was never executed by Collins but was instead executed by Mid State Mitsubishi's finance manager purportedly as Collins.

54. Mid State Mitsubishi further violated RISFA by failing to deliver to Collins a true and complete executed copy of the RISC.

55. By inaccurately listing the amount paid for a down payment, Mid State Mitsubishi also violated RISFA, Conn. Gen. Stat. § 36a-771(a), which requires that all essential provisions of the contract be included in the retail installment contract.

56. Mid State Mitsubishi's violations were willful, wanton and in disregard of Plaintiffs' rights and Mid State Mitsubishi is therefore not entitled to a deficiency under the Contract and is barred from recovering any finance, delinquency or collection charge or any interest under the Contract.

57. Mid State Mitsubishi and Santander have been restored to their pre-contractual position as nearly as possible because the Vehicle has been returned to it.

58. Collins is entitled to a rescission of the Contract due to the RISFA violations and a return of the $100 down payment and all payments made.

59. As assignee of the Contract, Santander is subject to claims and defenses that could be asserted against Mid State Mitsubishi pursuant to the terms of the Contract and pursuant to Conn. Gen. Stat. § 52-572g.

60. Additionally, Pursuant to Conn. Gen. Stat. § 42-150bb, Collins is entitled to attorney's fees and costs.

### e. REVOCATION OF ACCEPTANCE DUE TO FRAUD OR MATERIAL MISREPRESENTATION (Collins against both defendants)

48. Mid State Mitsubishi made false statements or material misrepresentations, including its false statements that Johnson was the purchaser, that Collins was only a co-signer, and that Johnson could refinance in six months and remove Collins as a co-signer.

49. Mid State Mitsubishi's forgery of Collins' signature on the Contract also constituted material fraud justifying the revocation of acceptance.

50. Plaintiffs are entitled to an order that they validly and effectively revoked acceptance of the Vehicle pursuant to Conn. Gen. Stat. § 42a-2-608 and § 42a-2-721.

51. Santander is liable to Plaintiffs as assignee of the Contract pursuant to the terms of the Contract and Conn. Gen. Stat. § 52-572g.

### f. CUTPA (All Parties)

52. Mid State Mitsubishi has engaged in unfair acts and practices in trade or commerce in violation of Conn. Gen. Stat. § 42-110a *et seq.* in connection with the transaction, as follows:

    a.    Its violations of TILA, ECOA, CROA and RISFA;

    b.    It forged Collins's electronic signature to the Contract;

    c.    On information and belief, it sold the Vehicle for more than the advertised price;

    d.    It listed a false down payment on the Contract;

9

      e.      It removed the Monroney sticker from the Vehicle in violation of federal regulations;

      f.      It charged a VIN etch fee even though it did not etch the windows of the Vehicle;

      g.      It charged Plaintiffs for a service contract that was neither requested nor desired;

      h.      It included a service contract that Plaintiffs had not requested;

      i.      It failed to provide Plaintiffs with a copy of the service contract, thereby precluding any possibility that they would cancel the service contract for a refund or submit claims under the service contract and possibly indicating that the contract was never registered;

      j.      It provided false information to Santander concerning the Vehicle's value in order to entice Santander into lending money, resulting in an indebtedness that substantially exceeded the value of the Vehicle;

      k.      It falsely told Johnson that she could refinance the loan in six months when it knew the statement to be false;

      l.      It failed to provide Plaintiffs with a copy of the contract documents at the time they were executed.

61.    Mid State Mitsubishi's conduct, as aforedescribed, was deceptive and unfair and in violation of CUTPA, and it has caused Plaintiffs to suffer ascertainable losses and damages in that it caused Collins to be responsible for the loan himself, they lost use of the vehicle, they paid additional sales taxes and paid finance charges on the increased sales tax; they paid for VIN etching even though the Vehicle's windows were

not etched, and they paid for a service contract that they did not request or desire, Johnson has no ownership interest in the Vehicle despite being the individual who made payments, and Collins became solely indebted for an amount that substantially exceeded the Vehicle's value.

62.     Mid State Mitsubishi is liable to Plaintiffs for their actual damages, attorney's fees and costs, and punitive damages pursuant to Conn. Gen. Stat. § 42-110g.

63.     Plaintiffs also seek rescission of the contract as an equitable remedy under CUTPA as an alternative claim to revocation of acceptance of the Vehicle, and that Santander report to all consumer reporting agencies to whom it made reports regarding the Contract that all previously reported information should be deleted.

64.     Santander is subject to these claims and to Plaintiffs' defenses under the Contract in accordance with the terms of the Contract and pursuant to Conn. Gen. Stat. § 52-572g

WHEREFORE, the Plaintiffs claim statutory damages of $2,000, actual damages, punitive damages, attorney's fees and costs, and an order that Plaintiffs validly and effectively revoked acceptance of the Vehicle or alternatively, a rescission of the transaction, and a return of amounts paid.

PLAINTIFFS, RAVEN JOHNSON and TYSHAUN COLLINS

By: _____
Daniel S. Blinn
dblinn@consumerlawgroup.com
Brendan L. Mahoney
bmahoney@consumerlawgroup.com
Consumer Law Group, LLC
35 Cold Spring Rd. Suite 512
Rocky Hill, CT 06067
Tel. (860) 571-0408
Fax (860) 571-7457
Juris No. 414047